UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action |
| v. ) | Number: 04-10158-JLT |
| ) | |
| SUNI MUNSHANI ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The defendant, Suni Munshani ("Munshani"), submits this memorandum in support of his motion to dismiss.

## INTRODUCTION

On March 12, 2003, a four count indictment was returned charging Munshani with two counts of criminal contempt, in violation of 18 U.S.C. § 401, and two counts of obstruction of justice, in violation of 18 U.S.C. §1503. Munshani was arraigned on March 31, 2003, and pled not guilty. Subsequently, 122 days elapsed which were not excludable pursuant to 18 U.S.C. § 3161(c)(1). Citing violations of his rights under the Speedy Trial Act ("Act") and the Sixth Amendment, Munshani moved to dismiss the Indictment with prejudice. (Copies of the materials filed by Munshani in support of that motion are attached as Exhibits A and B.)

On April 20, 2004, the court entered an order dismissing the case without prejudice. This Indictment, containing the same counts as the earlier Indictment, followed on May 19 2004.

This case should be dismissed because the earlier case ought to have been dismissed with prejudice, and such a dismissal would bar this case. The violation of the Act was serious. It resulted in the case pending against Munshani for more than 12

months, wreaking havoc with every aspect of his life. Moreover, the nature of the charges against him, coupled with the government's serial violations of the Act in many other cases, made dismissal with prejudice the appropriate outcome.

I.  The Proper Sanction For Violating the Speedy Trial Act Was Dismissal With Prejudice

The Act is clear: if a defendant is not brought to trial within its time limits, the "indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2); see also *United States v. Barnes*, 159 F.3d 4, 9 (1st Cir. 1998). Moreover, the Act authorizes the court to examine the circumstances of the violation and the underlying case and exercise its discretion in favor of dismissal with prejudice. 18 U.S.C. § 3162(a)(2); *United States v. Ramirez*, 973 F.2d 36, 38-39 (1st Cir. 1992) (affirming dismissal with prejudice); *United States v. DeGarmo*, 1998 U.S. Dist. Lexis 23398 *16-24 (N.D. Cal. 1998) (dismissing securities fraud case with prejudice).

In determining whether a case should be dismissed with prejudice, courts are to consider the following factors:

1. Seriousness of the offense;

2. The facts and circumstances of the case leading to dismissal;

3. The impact of reprosecution on the administration of justice and the administration of the Act; and

4. Prejudice to the defendant.

*United States v. Scott*, 270 F.3d 30, 58 (1st Cir. 2001); *United States v. Barnes*, 159 F.3d at 16. These factors militated in favor of dismissal with prejudice.

a.  Seriousness of the offense

In a colloquial sense, any federal criminal case is a serious matter, and Munshani in no way seeks to trivialize these charges, especially in light of their heavy impact on his life. *Infra*, pp. 8-9. However, when Congress specified in 18 U.S.C. § 3162(a)(2) that the seriousness of the offense was a factor for courts to consider in determining whether to dismiss with prejudice, it did not mean to label non-serious only those cases involving objectively minor charges. *Cf.*, 18 U.S.C. § 711a (criminalizing misuse of "Woodsy Owl" insignia). Instead, Congress intended, and the courts have held, that felony charges can properly be regarded as "non-serious" for purposes of the Act. *E.g., United States v. Brown*, 183 F.3d 1306, 1313-14 (11th Cir. 1999) (affirming dismissal with prejudice; district court did not abuse its discretion in holding that cocaine conspiracy charge was not serious for purpose of the Act); *United States v. Joseph*, 2003 U.S. Dist. LEXIS 17518 *6-7(N.D. Ill 2003) (holding bank fraud charge to be "less serious" in dismissing case with prejudice); *United States v. Eugene*, 1993 U.S. Dist. LEXIS 3009 *4-5 (S.D.N.Y. 1993) (false immigration document offenses not "serious" for purposes of the Act); *United States v. Hanks*, 1994 U.S. Dist. LEXIS 14295 *7 (D. Kan. 1994) (firearm possession not "serious" under circumstances alleged); *United States v. DeGarmo*, 1998 U.S. Dist. LEXIS 23398 *16-18 (securities fraud charges not "serious"). Indeed, in dismissing an indictment with prejudice for a violation of the Act, this court concluded that although "illegal re-entry" is a "meaningful offense" and a felony, it is not "serious" for purposes of the Act. *United States v. Pena*, 73 F. Supp. 2d 56, 59-60 (D. Mass. 1999).

The criminal charges against Munshani ought not to be deemed serious for purposes of the Act. Those charges arise entirely from a private dispute between

Munshani and a company over his entitlement to certain commissions. Indictment, ¶¶ 5-8. As detailed more fully below, the charges have had a profound effect on every aspect of his life. However, when compared to other criminal cases in this court, the charges -- arising out of a private dispute and carrying a guideline sentencing range as low as 10-16 months imprisonment[1] -- simply cannot be regarded as "serious" for purposes of the Act.

b. The Facts and Circumstances Leading to Dismissal

Although the relative "non-seriousness" of the charges is a factor militating in favor of dismissal with prejudice in the instant case, courts have routinely dismissed even "serious" cases with prejudice when warranted by the other factors. E.g., United States v. Clymer, 25 F.3d 824, 831 (9th Cir. 1994) (finding methamphetamine charge "serious" yet dismissing with prejudice); United States v. Ramirez, 973 F.2d 36, 38-39 (1st Cir. 1992) (cocaine charges dismissed with prejudice); United States v. Giambrone, 920 F.2d 176, 180-82 (2nd Cir. 1990) (same).

The facts and circumstances leading to the violation in this case can be summarized as follows: As has happened repeatedly in this district in recent years, the government and the Magistrate Judge simply lost track of the case. This is not a case where the defendant's behavior in any way caused or induced the violation.

Strikingly similar circumstances were confronted by the Court of Appeals for the First Circuit in Ramirez. Ramirez involved a "serious" drug offense which had been dismissed with prejudice by the district court when an "administrative oversight" resulted

---

[1] The relevant guideline is U.S.S.G. § 2J1.2, which at the time of the alleged offenses provided for a base offense level of 12. See U.S.S.G. Amendment 647. Even assuming, contrary to law and fact, that the 3 level enhancement of U.S.S.G. § 2J1.2(b)(2) were to apply, the offense level would be 15. Munshani is in Criminal History Category I, resulting in a guideline sentencing range of either 10-16 months imprisonment or 18-24 months.

in an Act violation. 973 F.2d at 38. In affirming the dismissal with prejudice, the Court of Appeals observed:

> The facts and circumstances which led to the dismissal are also of a serious nature because of the pervasiveness of such a risk of administrative oversight in all courts. Nothing unusual occurred in this case. The district court merely lost track of the ... deadline, in the midst of attending to its many other cases. It is the ordinariness of the oversight which makes the circumstances so serious. It can happen in any court, at any time. The expansiveness of such a ... violation risk makes it important for a court for the sake of deterrence and more painstaking vigilance. Even though the oversight was accomplished without malice, that does not ameliorate the gravity of its effects. <u>When a [Speedy Trial Act] violation is caused by the court or the prosecutor, it weighs in favor of granting a dismissal with prejudice. An administrative oversight is no excuse for a [Speedy Trial Act] violation.</u>

973 F.2d at 38-39. (emphasis added).

Where, as here, responsibility for the violation rests entirely with the government and the Magistrate Judge, and not the defendant, the facts and circumstances of the violation point strongly in favor of dismissal with prejudice. *United States v. Ramirez*, 973 F.2d at 38-39; *see also United States v. Giambrone*, 920 F.2d 176, 180-81 (2nd Cir. 1990) (affirming dismissal with prejudice of serious drug charge).

    c.    The Impact Of Reprosecution On The Administration Of Justice And The Speedy Trial Act

Under the circumstances of this case, dismissal without prejudice was an utterly toothless remedy. Notwithstanding its violation of the Act, the government simply brought a new indictment quite similar to the original indictment. The dismissal without prejudice will not deter the government from future violations of the Act, and has simply permitted the government to extend Munshani's agony.

There can be little doubt that the constitutional interests safeguarded by the Act are best vindicated by a dismissal with prejudice. *E.g.*, *United States v. Ramirez*, 973 F.2d at 38-39. "When, as often occurs, trial courts simply dismiss cases without prejudice for

violation of the Act, so as to permit the government to reprosecute the claim simply by obtaining a new indictment, we participate in a charade." *United States v. Joseph*, 2003 U.S. Dist. LEXIS 17518 *11 (quoting *United States v. Jervey*, 630 F. Supp. 695, 698 (S.D.N.Y. 1986)). "It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays...." *United States v. Martinez*, 75 F. Supp. 2d 360, 366 (D.N.J. 1999) (dismissing serious drug charges with prejudice) (quoting *United States v. Taylor*, 487 U.S. 326, 342 (1988)); *see also United States v. James*, 861 F. Supp. 151, 156 (D.D.C. 1994) (dismissing with prejudice to vindicate "the important public policy of the judiciary's responsibility to protect a defendant's right to a speedy trial....").

*Ramirez* was decided nearly 12 years ago, yet its message about the great importance of a defendant's right to a speedy trial has been routinely ignored. In the District of Massachusetts alone, there have been at least six recent cases in which speedy trial violations occurred.[2] A dismissal without prejudice simply does not impose a sufficient cost upon the government to alter its behavior and increase its compliance with the Act.

> Reprosecution in this case would send exactly the wrong signal to those responsible for complying with the Act's requirements and would, in all likelihood, foster in the future a cavalier disregard, if not a concerted disregard, of those requirements.

---

[2] The reported cases include *United States v. Barnes*, 159 F.3d 4 (1st Cir. 1998) (Massachusetts); *United States v. Scott*, 270 F.3d 30 (1st Cir. 2001) (Massachusetts); *United States v. Medugno*, 233 F. Supp. 2d 184 (D. Mass. 2002) (Massachusetts); (*United States v. Castillo-Pacheco*, 53 F. Supp 2d 55 (D. Mass. 1999) (Massachusetts); *United States v. Pena*, 73 F. Supp. 2d 56 (D. Mass. 1999) (Massachusetts). In addition, Munshani is aware of at least one unreported case involving a Speedy Trial dismissal, *United States v. Campbell*, Cr. No. 99-10032-EFH (D. Mass. 2001), although there are likely other unreported cases.

*United States v. Ramirez*, 973 F.2d at 39. *Accord United States v. Clymer*, 25 F.3d at 832-833 (dismissing with prejudice because a decade after Court of Appeals announced requirements for the Act, practice in some courts and prosecutors' offices was unaffected); *United States v. Giambrone*, 920 F.2d at 180-182 (Ten speedy trial violations from W.D.N.Y. over 16 years represents "a pattern of disregard for speedy trial rights; affirms dismissal with prejudice). "A pattern of disregard for speedy trial rights is also detrimental to the administration of the criminal justice system since delays risk the loss of important evidence, and repetitive prosecutions on the same charges cause wasteful replication of effort. Such delays also harm both the interest of the defendant and the interest of the public...." *United States v. Giambrone*, 920 F.2d at 181.

This case provides a particularly good vehicle for vindicating the interests implicated by the Act. Munshani stands charged with relatively minor offenses arising out of a private business dispute. The administration of justice would not be harmed by dismissal with prejudice. Indeed, the state and federal civil courts have already punished Munshani severely for the conduct alleged here: the Suffolk Superior Court dismissed a multi-million dollar suit he brought against an affiliate of the federal civil defendant, Terago, and ordered him to pay sanctions totaling $122,667. *Munshani v. Signal Lake Venture Fund II LP*, C.A. No. 00-5529-BLS, p. 7 (Suffolk Superior Court Oct. 9, 2001), *Id.*, p. 5 (Suffolk Superior Court Dec. 5, 2001). Similarly, his federal civil case was dismissed, and the court imposed sanctions of $75,434. *Munshani v. Terago Communications, Inc.*, C.A. No. 00-12614-RGS, (D. Mass. Nov. 15, 2001); *Id.*, p. 3, p. 5 (March 12, 2002); *Id.*, p. 2 (April 29, 2002).

In short -- and unlike many instances where courts have dismissed cases with prejudice -- the administration of justice would not be adversely affected by such a dismissal in this case. Indeed, a dismissal with prejudice is the only way to end the government's pattern of disregard for the speedy trial rights of defendants. *United States v. Ramirez*, 973 F.2d. at 39; *United States v. Giambrone*, 920 F.2d at 181.

### d. Prejudice to the Defendant

The pendency of this case has exacted an awful toll on Munshani. Adverse decisions in the civil cases were issued in 2001, the criminal investigation began in 2002, the Indictment was returned in 2003, and the speedy trial violations occurred in both 2003 and 2004. Munshani has been living under a cloud for a very long time.

While certainly not unique, the anxiety and strain he has experienced as a result of these delays and the violations are a cognizable form of prejudice against which the Act seeks to protect. He has been unemployed since the return of the Indictment, and its pendency has undoubtedly harmed his job prospects. He has been required to deplete his resources merely to defend himself and keep his family alive. He has suffered terrible reputational harm, as the criminal case has received publicity in the media and on the internet. Munshani's relationships with friends and family have been affected. As in any case where significant time elapses and memories are lost, his ability to defend the case may be impaired. *E.g., United States v. Taylor*, 487 U.S. at 340-41; *United States v. Martinez*, 75 F. Supp. 2d at 367.

The Supreme Court has explicitly recognized that the Act was intended "to minimize anxiety and concern of the accused" and "to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). With respect to the latter

interest, the Court recognized that prejudice results if defense witnesses are unable to recall events. "Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." *Barker v. Wingo*, 407 U.S. at 532. Courts therefore often presume the existence of prejudice from the passage of time. *United States v. Hastings*, 847 F.2d 920, 929 (1st Cir. 1988); *see also United States v. Clymer*, 25 F.3d at 832.

Munshani has unquestionably been prejudiced by virtue of the long delays in the progression of his case. In a deeply ironic twist, the effect of the earlier dismissal without prejudice is that the government has suffered no harm from its violation of Munshani's rights under the Act, while Munshani's period under a cloud has been extended indefinitely.

## CONCLUSION

For all of the foregoing reasons, the court should dismiss the indictment with prejudice.

SUNI MUNSHANI
By his attorney,

Mark W. Pearlstein (BBO #542064)
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
(617) 535-4000

Dated: June 23, 2004

**CERTIFICATION OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on _____