IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

```
------------------------------
UNITED STATES OF AMERICA    :

         v.                 :          NO. 04-10158-JLT

SUNI MUNSHANI               :
------------------------------
```

MOTION TO DISMISS INDICTMENT

The United States of America, by and through its attorneys, MICHAEL J. SULLIVAN, United States Attorney, District of Massachusetts, ALLISON D. BURROUGHS, Assistant United States Attorney and TODD M. HINNEN, Trial Attorney, Department of Justice, hereby moves to dismiss Indictment Number 04-10158-JLT, without prejudice, pursuant to Federal Rule of Criminal Procedure 48(a) and in support thereof avers as follows:

1. On December 18, 2000, the defendant herein, Suni Munshani, filed suit against a venture capital fund, Signal Lake II, and related parties in Suffolk County Superior Court alleging breach of contract, and requesting damages of $25 million ("the state suit").

2. On December 22, 2000, Munshani filed a civil complaint in the United States District Court for the District of Massachusetts against a company called Terago Communications, Inc. ("Terago") and related parties ("the federal suit"). Terago

was a high technology company based in Andover, Massachusetts.

3. Some of the Signal Lake II general partners sat on Terago's Board of director's and Signal Lake II was contemplating an investment into Terago. Suni Munshani was a general partner in Signal Lake II and had committed in principle to both raising money for Terago and investing personally in Terago.

4. The federal suit involved a contractual dispute between Munshani and Terago concerning the terms of Munshani's personal investment in Terago and how, whether and under what circumstances Munshani would be compensated for his efforts in raising additional funds for Terago.

5. On January 18, 2001, Terago moved to dismiss the federal suit alleging, <u>inter alia</u>, that there was no written memorialization of the alleged contract and that it was therefore unenforceable under the Massachusetts Statute of Frauds.

6. On January 29, 2001, Munshani filed an opposition to the motion to dismiss the federal suit. Munshani alleged that the agreement had, in fact, been committed to writing and attached a copy of an email ("the email"), purportedly sent from the CEO of Terago to Munshani, in support of his claim. Terago claimed that the email was inauthentic.

7. On February 7, 2001, the federal court denied the motion to dismiss the federal suit, in part because of its reliance on the email purportedly memorializing the agreement between Munshani and Terago.

8.  Thereafter, on February 16, 2001, the CEO of Terago filed an affidavit in the federal suit denying that he had written or sent the email. In support, he attached a separate affidavit from a computer data recovery expert who concluded that the email had not been created on a Terago computer or by Terago's CEO. On that same day, these same materials were filed in the state suit in support of a motion filed by the defendants to require Munshani to preserve electronic evidence and to expedite the production of computerized information.

9.  On February 20, 2001, Munshani filed an affidavit in the federal suit declaring under penalty of perjury that he had received the email from the CEO of Terago. On February 21, 2001, Munshani filed this same affidavit in the state suit.

10. On March 9, 2001, in connection with the state case, Judge Allan van Gestel of the Suffolk County Superior Court appointed an independent computer data recovery expert to examine Munshani's computer.

11. On September 12, 2001, the independent expert filed a report in which he concluded unequivocally that the email was inauthentic and had been created by Munshani on approximately December 19, 2000 (shortly after filing the state suit and just prior to filing the federal suit). On October 9, 2001, Judge van Gestel dismissed the state suit.

12. On October 5, 2001, when given the opportunity to respond to the expert's report and in response to a motion for

sanctions filed by Terago, Munshani asserted his Fifth Amendment right against self-incrimination. He similarly asserted his Fifth Amendment rights in the state court proceeding.

13. On November 15, 2001, Judge Stearns, relying on the expert's report in the state suit, dismissed Munshani's complaint with prejudice, ordered that Munshani pay Terago's costs and attorney's fees incurred in defending against Munshani's federal lawsuit and referred the matter to the U.S Attorney's office because of possible criminal perjury on Munshani's part.

14. At no time following the submission of the expert's report did Munshani appeal the dismissal of either the federal or the state court cases nor did he bring any exculpatory or mitigating evidence to the attention of either court, even after sanctions were imposed in both cases.

15. On March 12, 2003, a federal grand jury indicted Suni Munshani for obstruction of justice and criminal contempt. The indictment was dismissed on April 20, 2004. Munshani was indicted on the same charges again by a second federal grand jury on May 19, 2004. This second indictment was superceded on August 4, 2004 to add sentencing factors as suggested by Blakely v. Washington, 2004 WL 1402697 (June 24, 2004).

16. At no time prior to these charges being filed, during the pendency of the charges, during the period between the first indictment and the second nor at any other time prior to December 2, 2004 (four days before trial), was the government advised of

the existence of any exculpatory evidence or provided with any documentation that would have suggested that such exculpatory evidence existed.

17. Eventually, trial was scheduled to commence on Monday, December 6, 2004. On Thursday, December 2, 2004, the United States was notified by counsel for Munshani that they expected Dennis Glatting, Munsahni's systems administrator to take the stand and testify that he had in fact sent the fake email to Munshani, without Munshani knowing that it had not actually come from Terago.

18. In response to this, the United States promptly served a trial subpoena on Glatting requiring the production of all relevant documents and computer generated materials in his possession. Glatting had already received testimonial trial subpoenas from both the United States and defendant Munshani.

19. On Friday, December 3, 2004, late in the day, the United States received Defendant's proposed exhibits, which included an email purportedly sent from Glatting to Munshani on September 20, 2001 ("the Glatting email"), eight days after the completion of the expert's report and prior to Munshani taking the 5th Amendment in the federal case or being assessed sanctions, in which Glatting appeared to admit to and apologize for sending the fake email. A copy of this email is attached hereto as Exhibit 1.

20. On Saturday, December 4, 2004, the United States

contacted counsel for Munshani and asked for a digital copy of the Glatting email, including the transmittal records, in order to determine whether this second email was legitimate or not. On Sunday, December 5, 2004, counsel for Munshani declined to provide the documentation at that time, but the parties did agree to jointly ask for a continuance of the trial to allow the government time to consider the newly provided evidence.

21. On Monday, December 6, 2004, Dennis Glatting produced documents as required by the subpoena he had received the week prior. Included in these documents was an affidavit prepared by Glatting and provided to current counsel for Munshani on February 20, 2003. In this affidavit stated that he created and sent the fake email to Munshani as a "joke." He claimed that he did not expect Munshani to rely on the email in support of his lawsuit against Terago. He claimed that once he found out that Munshani had so used the email, he was afraid to admit his responsibility and ended up lying to the court appointed expert about his conduct. A copy of the affidavit is attached hereto as Exhibit 2.

22. After briefly speaking with Glatting and reviewing his affidavit, the parties appeared in court and jointly asked for a continuance, which was granted by the court.

23. Thereafter, the government spoke with Glatting in more detail, had a proffer session with Munshani, talked with his counsel and former co-counsel and looked at the computer on which he professed to have received the Glatting email.

24. As a result of the written materials provided to the government on the eve of trial, including the Glatting email and his affidavit, the government believes believe that it no longer has sufficient evidence to go forward with this criminal prosecution at this time. Although the government takes no position on the guilt or innocence of Mr. Munshani, it does not now appear that the government has adequate evidence to be assured that the jury would find the defendant guilty beyond a reasonable doubt.

25. Federal Rule of Criminal Procedure 48(a) provides that "the United States attorney may by leave of court file a dismissal of an indictment...and the prosecution shall thereupon terminate." Fed.R.Crim.P. 48(a).

Wherefore, pursuant to Fed.R.Crim.P. 48(a), the government respectfully requests that the court dismiss Indictment No. 04-10158-JLT without prejudice.

Respectfully submitted,

MICHAEL J. SULLIVAN
U.S. Attorney

By: /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
Assistant U.S. Attorney

TODD M. HINNEN
Trial Attorney
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I, Allison Burroughs, Assistant U.S. Attorney, hereby certify that I have caused the foregoing to be mailed, postage prepaid, to the following:

>Mark W. Pearlstein
>McDermott, Will & Emery
>28 State Street
>Boston, MA 02109-1775

on this 23rd day of December, 2004.

*[signature]*